IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

ESTATE OF ADAM TRAMMELL, by his
Special Administrator, LARRY TRAMMELL,

      Plaintiff,

v.

VILLAGE OF WEST MILWAUKEE CHIEF OF
POLICE DENNIS NASCI, individually and in his
Official capacity, OFFICER ANTHONY MUNOZ,
CORPORAL MICHAEL ROHLEDER,
OFFICER DANIELLE ENGEN, and
VILLAGE OF WEST MILWAUKEE,

      Defendants.

**COMPLAINT**

Civil Action No. 18-CV-748
[Trial by Jury Demanded]

_____

NOW COMES Plaintiff, ESTATE OF ADAM TRAMMELL, by his Special Administrator, Larry Trammel, by their attorneys Mark L. Thomsen of GINGRAS, CATES & WACHS, LLP, and Robin Shellow of THE SHELLOW GROUP, and complains against the above-named defendants, and for his claims for relief, alleges and shows to the court as follows:

### I. INTRODUCTION

1.    This is a civil rights action under 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights to be free of excessive and deadly force and for equal protection under the laws as secured by the Fourth and Fourteenth Amendments of the United States Constitution.

### II. JURISDICTION AND VENUE

2.    This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

1

3. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because the events and conduct giving rise to the Plaintiff's claims asserted herein occurred within this judicial district.

### III. PARTIES

4. Adam Trammell, date of birth December 17, 1994, was 22 years old and at all times relevant hereto was an adult human being resident of the State of Wisconsin, residing at 5410 West Greenfield Avenue, Apartment 21, West Milwaukee, WI 53214. The police reports describe him as a black male. Mr. Trammell suffered severely and died on May 25, 2017 as a result of the defendants' unlawful conduct as alleged herein. On January 5, 2018, his father Larry Trammell was issued Letters of Special Administration for the Estate of Adam Trammell to prosecute this action to obtain justice for his son.

5. Defendant Dennis Nasci ("Nasci") is the Police Chief of the Village of West Milwaukee Police Department. In that capacity he is in charge of the Village of West Milwaukee Police Department ("VWMPD"). By law, custom, and/or delegation, he has policymaking authority over the police department for all actions at issue in this case. He is responsible for ensuring that the policies and practices of the VWMPD comply with federal and state requirements for the treatment of citizens like the Plaintiff. He is sued in his official and individual capacities for all the constitutional claims at issue arising out of Plaintiff's unlawful excessive force arrest and death while in custody. At all times relevant to this action, Nasci was acting under color of law and within the scope of his employment with the VWMPD or Village of West Milwaukee ("VWM").

6. Defendant Officer Anthony Munoz ("Munoz") is an adult citizen of the State of Wisconsin and a resident of the State of Wisconsin. Defendant Munoz was a police officer with

2

VWMPD at all times relevant to this action and was acting under color of law and within the scope of his employment with the VWMPD or VWM at all times relevant hereto.

7. Defendant Corporal Michael Rohleder ("Rohleder") is an adult citizen of the State of Wisconsin and a resident of the State of Wisconsin. Defendant Rohleder was a police officer with VWMPD at all times relevant to this action and was acting under color of law and within the scope of his employment with the VWMPD or VWM at all times relevant hereto.

8. Defendant Officer Danielle Engen ("Engen") is an adult citizen of the State of Wisconsin and a resident of the State of Wisconsin. Defendant Engen was a police officer with VWMPD at all times relevant to this action and was acting under color of law and within the scope of her employment with the VWMPD or VWM at all times relevant hereto.

9. Defendant Village of West Milwaukee ("VWM"), with offices of its executive at 4755 West Beloit Road, West Milwaukee, Wisconsin, 53214, is and was at all times material hereto, a Municipal Corporation organized under the laws of the State of Wisconsin. VWM established, operated and maintained VWMPD at all times material hereto; VWM is ultimately responsible for the training and supervising of VWMPD employees and the creation and implementation of its policies and procedures through its Chief of Police Defendant Nasci and had ultimate control and authority over VWMPD and all defendants and pursuant to § 895.46, Wis. Stat., is obligated to indemnify all defendants in this action.

## IV. GENERAL FACTUAL ALLEGATIONS

### A. TRAINING RELATED TO TASER USE AND THOSE IN NEED OF PSYCHOLOGICAL OR MEDICAL TREATMENT

10. Plaintiff realleges and incorporates by reference the allegations of all the preceding paragraphs.

11. Village of West Milwaukee police officers, including the defendants, like other Wisconsin law enforcement officers, are specifically trained, through the use of the Wisconsin Department of Justice Defensive Arrest and Tactics for use of force, that if an officer is confronted with a medical emergency or recognizes medically significant behaviors, especially those consistent with "excited delirium," that the safety of all involved, including the person with the medical or psychological condition, is the priority.

12. Wisconsin law enforcement officers, including the defendants, are specifically trained that if they believe a person is experiencing "excited delirium" or some other psychological/medical problem, that the officers should, among others: avoid increasing the person's agitation or excitement; minimize any physical struggle with the person; minimize any use of restraints; and get medical care as soon as possible. To help accomplish this, officers are instructed, among others, to calm the person; request back up; maximize the number of officers to minimize the initial level of force; and only use an "Electronic Control Device" once the paramedics are on the scene.

13. Village of West Milwaukee police officers, including the individual defendants, are specifically trained through its department's Use of Force Policy 401 that:

- A "Conducted Energy Weapon" is "A less lethal force weapon utilized by trained personnel that causes Neuro-Muscular Incapacitation to a combative or potentially combative subject. The use of this device is intended to incapacitate the subject with a minimal potential for causing death or great bodily harm."

- "Taser®: is a Nuero-Muscular Incapacitation weapon that disrupts the body's ability to communicate messages from the brain to the muscles causing

4

temporary motor skills dysfunction to a [person]."

- "Drive Stun: is a secondary function of the Taser to stun a subject by making direct contact with the body after the air cartridge has been expended."

- "Air Cartridge: is a replaceable cartridge for the TASER which uses compressed nitrogen to fire two barbed probes on their connecting wires, sending a light voltage/low current signal to a [person]."

- The "Electronic Restrain Device X26 TASER" is one control option available to officer and officers must assess the effectiveness of each application and determine whether further applications are warranted or a different tactic should be deployed.

- The TASER® is programmed to deliver a five second Neuro Muscular Incapacitation current.

- "The TASER® **shall not** be used: "When it is reasonable to believe incapacitation of the [person] may result in great bodily harm or death," or "Punitively for purposes of coercion or in an unjustified manner," or "When a [person] is handcuffed."

14. TASER requires all users of its products, including the individual defendants, to be trained and particularly instructed, among others, that:

- **"Psychologic and Metabolic Effects."** CEW (conducted electrical weapon), like the X26 TASER, use causes physiologic and/or metabolic effects that may increase the risk of death or serious injury. These effects include changes in blood chemistry, blood pressure, respiration, heart rate and rhythm, and adrenaline and stress hormones, among others. People suffering from excited

5

delirium or profound agitation are particularly susceptible to X26 Taser exposure.

- **"Minimize the number and duration of CEW exposures."** Most human CEW lab testing has not exceeded 15 seconds of CEW application, and none has exceeded 45 seconds. If a CEW deployment is ineffective in incapacitating a subject or achieving compliance, consider alternative control measures in conjunction with or separate from the CEW.

- **"Cardiac Capture."** When possible, avoid targeting the frontal chest area near the heart to reduce the risk of potential serious injury or death.

- "**Avoid sensitive areas."** When practicable, avoid intentionally targeting the CEW on sensitive area of the body such as the chest area(area of the heart), breast, groin, or genitals.

- **"Cumulative Effects."** CEW exposure causes pain and stress and cumulative CEW exposure increases the risk of serious injury and death particularly to those that are particularly susceptible to CEW injury in the first instance.

### B. MAY 25, 2017 – DEFENDANTS' UNLAWFUL CONDUCT

15. At about 5:00 a.m. on May 25, 2017, the Village of West Milwaukee Police Department received a 911 call through the Milwaukee County Sheriff's Department reporting a person in psychological distress standing naked in the hallway of an apartment building at 5410 West Greenfield Avenue in the Village of West Milwaukee, Wisconsin.

16. Defendant VWM had three officers respond to the call, Defendants Rohleder, Munoz and Engen, and upon arriving at the scene they were told the person had gone back into his apartment, apartment #21.

6

17. Munoz knocked at the door and when no one answered and being told of concerns for the safety of the person, all three officers entered the apartment by ramming open the door. Mr. Trammell was found in his shower in his small bathroom. Munoz and Rohleder entered the bathroom and Engen remained outside at the bathroom door.

18. Munoz, TASER already drawn, opened the shower curtain and Munoz and Rohleder observed Mr. Trammell naked in the shower and according to the officers drinking water.

19. Mr. Trammell looked at Munoz and did not immediately respond verbally. Mr. Trammell was not combative but appeared only to need immediate psychological or medical help or treatment.

20. Defendants Rohleder, Munoz and Engen did not wait for further back up assistance and/or paramedics. If they had done so, Mr. Trammell would be alive today with his family.

21. However, the officers did not attempt to de-escalate the rather calm situation, instead, among others, Munoz aggressively reached in the shower towards the naked and distraught Mr. Trammell aggravating Mr. Trammell's obvious agitation. In response, Mr. Trammell pushed Munoz's forearm away.

22. Again, rather than de-escalating the situation they had created and calling for additional back up and paramedics, Munoz deployed his X26 TASER causing Mr. Trammell to scream in pain and agony as the 50,000 volts surged through his body for five seconds as the electricity knocked him into the tub. Munoz had hit Mr. Trammel in the chest area with one of the Taser projectile prongs.

7

23. When Mr. Trammell began to move in the bathtub, Rohleder too deployed his X26 TASER. Records of his taser use show that this deployment likely lasted for 12 seconds! After the fact, it was shown that one of Rohleder's projectile prongs also struck Mr. Trammell's chest area. Munoz deployed a second cycle of 50,000 volts into Mr. Trammell who again screamed in agony.

24. Mr. Trammell was handcuffed in the bathtub. Then, contrary to the written department policy that precludes TASER use after a person is handcuffed, the tasing continued unrelentingly, including with a projectile prong later being found in the area of his pubic hair of his groin, and left Mr. Trammell vomiting.

25. Upon information and belief and according to the report of the Greenfield Police Department personnel involved in the investigation of the incident, Mr. Trammel was exposed to the 50,000 volts cycle on at least 15 occasions (the majority after he had been handcuffed):

1) 5:06:27 AM
2) 5: 07:14 AM
3) 5:08:40 AM
4) 5:08:46 AM
5) 5:08:51 AM
6) 5:09:48 AM
7) 5:11:17 AM
8) 5:12:08 AM
9) 5:12:30 AM
10) 5:12:57 AM
11) 5:13:05 AM
12) 5:13:57 AM
13) 5:14:03 AM
14) 5:14:l6 AM
15) 5:15:24 A M

26. Engen never attempted to intervene to stop the unlawful tasing and when the other two officers had dropped their TASERs, she even handed her TASER to Rohleder who deployed

8

it on Mr. Trammell. The three acted in concert to deprive Mr. Trammell of his constitutional rights.

27. Mr. Trammell needed medical help and treatment. Instead, the defendants forced him to endure approximately 82 total seconds of electrical shock over nearly 10 minutes. Civilized societies call such conduct state sanctioned torture.

28. Mr. Trammell was even tased at least once while alone and still in the bathtub while all the defendant officers waited outside his apartment door in the hallway for West Allis Police Department officers to arrive along with paramedics. His pain, screams and howling as a result of this unlawful gruesome conduct can only be imagined by listening to the police audio tapes of his anguish.

29. Throughout the episode, Mr. Trammell cried out: "Jesus."

30. By 5:24 AM, sufficient numbers of West Allis officers arrived to allow Mr. Trammell to be carried out of the bathtub into the hallway without a single use of a TASER. Mr. Trammell was ultimately transported to Froedtert Hospital but to no avail, Mr. Trammell was pronounced dead at 6:32 AM.

31. The Milwaukee County Medical Examiner Autopsy Protocol noted that Mr. Trammell suffered from multiple blunt force injuries, including abrasions and contusions of the head, extremities, and torso, a fracture of the anterior left second rib and that he had become "unconscious following a physical struggle and restraint (electrical, physical, and chemical)." The autopsy photos reveal a battered body, wrists and hands covered in blood, and a body impaled with prongs.

32. Upon information and belief, following the incident, defendant Police Chief Dennis L. Nasci confirmed that "proper" TASER training was in place prior to the incident and

that no discipline was to be issued to defendants Rohleder, Munoz, or Engen implicitly confirming that the defendant officers' conduct was consistent with the VWM Police Department's training and written policies and/or de facto policy and that all defendants sanctioned and ratified the unlawful conduct of the three VWMPD officers at the scene on May 25, 2017.

33. That as a result of the unlawful conduct by the defendants as set forth herein, Adam Trammell sustained severe personal physical and psychological injuries and death and suffered losses and damages, including severe pain, suffering, emotional distress, medical expenses, funeral and burial expenses, and other compensable injuries and damages, all to the damage of his Estate in an amount to be determined at a trial of this matter

## V. FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS ROHLEDER, MUNOZ, AND ENGEN

34. Plaintiff realleges and incorporates by reference the allegations of all the preceding paragraphs.

35. At all relevant times herein, the defendants Rohleder, Munoz and Engen were "persons" for purposes of 42 U.S.C. § 1983 and acted under color of state law to deprive Adam Trammell of his constitutional rights.

36. At all times material hereto, the defendants used unnecessary, excessive and deadly force, including but not limited to, unlawfully deploying their X26 TASERs on at least 15 occasions in aggregate.

37. That at the time the defendants used the excessive and deadly force, there was not any threat of death or serious bodily harm to anyone but Adam Trammell, who was only in need of psychological or medical care.

38. That the defendants' conduct constituted the use of excessive and deadly force without cause or justification in violation of Adam Trammell's Fourth Amendment Rights as incorporated by the Fourteenth Amendment and/or his equal protection rights guaranteed by that same Amendment.

39. At all times material to this complaint, the defendants were VWMPD Officers, acting under color of the statutes, customs, ordinances and usage of the VWM and VWMPD and were acting in the scope of their employment.

40. That the described conduct of the part of the defendants as set forth above was a cause of the plaintiff's severe injuries, death, losses and damages as set forth herein.

41. The defendant, VWM, is liable pursuant to sec. 895.46, Wis. Stat., for payment of any judgment entered against the individual employee defendants in this action because said defendants were acting within the scope of their employment when they committed the acts described above.

## VI. SECOND CLAIM FOR RELIEF AGAINST DEFENDANT NASCI

42. Plaintiff realleges and incorporates by reference the allegations of all the preceding paragraphs.

43. At all relevant times herein, the defendant Nasci was a "person" for purposes of 42 U.S.C. § 1983 and acted under color of state law to deprive Adam Trammell of his constitutional rights.

44. At all times material hereto, upon information and belief, the defendant Nasci was responsible for the use of force policy, written or otherwise, followed by the other individual defendants and thus directed and ratified the unlawful and unnecessary excessive and deadly force utilized with respect to Mr. Trammell including, but not limited to, authorizing the other

defendants to deploy their X26 TASERs on at least 15 occasions and even after Mr. Trammell was handcuffed.

45. That at the time the defendant Nasci so instructed, trained and allowed the unlawful excessive and deadly force, there was not any threat of death or serious bodily harm to anyone but Adam Trammell, who was only in need of psychological or medical care.

46. That such conduct constituted the authority to VWMPD officers to use excessive and deadly force without cause or justification in violation of Adam Trammell's Fourth Amendment Rights as incorporated by the Fourteenth Amendment and/or his equal protection rights guaranteed by that same Amendment.

47. At all times material to this complaint, defendant Nasci was VWM Chief of Police, acting under color of the statutes, customs, ordinances and usage of the VWM and VWMPD and was acting in the scope of his employment.

48. That the described conduct of the part of defendant Nasci as set forth above was a cause of the plaintiff's severe injuries, death, losses and damages as set forth herein.

49. The defendant VWM is liable pursuant to sec. 895.46, Wis. Stat., for payment of any judgment entered against this individual employee defendant in this action because said defendant was acting within the scope of his employment when he committed the acts described above.

### VII. THIRD CLAIM FOR RELIEF – MONELL CLAIM

50. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs.

51. The acts of the individual defendants, including unlawfully tasing Adam Trammell on at least 15 occasions without significant justification, was done in accordance with

12

the VWM and its Police Department's de facto policy, regulation, decision or custom condoning excessive force by use of excessive TASER use in executing arrests and/or violating person's equal protection rights. That these respective de facto policies were officially adopted, expressly or implicitly, and promulgated or practiced and ratified by the VWM, its Chief of Police, and as such constitute a de facto governmental custom in such department, even though such custom may not have received written formal approval by such department, and even though such de facto policies were inconsistent with or even violated its written policies.

52. This official or de facto policy or custom of utilizing excessive force and/or violating person's equal protection rights permitted, encouraged, tolerated and ratified the actions of defendants Munoz, Rohleder and Engen, all in malicious or reckless disregard or with deliberate indifference to Adam Trammell's Fourth or Fourteenth Amendment Rights.

53. That this official or de facto policy and custom of utilizing excessive force and/or violating person's equal protection rights arose or was allowed to continue as a result of, among others, the VWM and the VWMPD's failure to adequately supervise, discipline, and/or train its employees. Upon information and belief, some or all of the individual defendants and other VWMPD officers had previously used their TASERS in an unjustified and excessive manner without being disciplined and/or properly trained.

54. That the described conduct on the part of all the defendants, including VMW Chief of Police, in his official capacity, was a cause of the plaintiffs' severe injuries, death, losses and damages as set forth herein.

55. The defendant VWM is liable pursuant to sec. 895.46, Wis. Stat., for payment of any judgment entered against this individual employee defendant in this action because said

13

defendant was acting within the scope of his employment when he committed the acts described above.

## VIII. FOURTH CLAIM FOR RELIEF

56. Plaintiff realleges and incorporates by reference all the allegations in the preceding paragraphs.

57. That the above-described conduct of all the individual defendants was unlawful, extreme, malicious, outrageous and/or intentional.

58. That such conduct was intended to cause Adam Trammell unnecessary and severe personal physical and psychological and emotional injuries.

59. That such conduct on the part of all the individual defendants was a cause of the severe personal injuries, physical and psychological and emotional, suffered by Adam Trammell as well as his resulting death.

60. At all times material hereto, the individual defendants acted maliciously and/or with reckless disregard and/or with deliberate indifference towards Adam Trammell or in an intentional disregard of his rights, such as to subject all the individual defendants to punitive damages.

61. The defendant VWM is liable pursuant to sec. 895.46, Wis. Stat., for payment of any judgment entered against this individual employee defendant in this action because said defendant was acting within the scope of his employment when he committed the acts described above.

WHEREFORE, the plaintiff demands judgment against the defendants, jointly and severally, as follows:

a. Against defendants Munoz, Rohleder, and Engen in their individual capacity, for compensatory damages, for the violation of Adam Trammell's rights, as set forth above, in an amount to be determined at a trial of this matter;

b. Against defendant Chief Dennis Nasci, in his individual and official capacity, for compensatory damages for the violation of Adam Trammell's rights, as set forth above, in an amount to be determined at a trial of this matter;

c. Against defendant Officer Anthony Munoz for punitive damages for the violation of Adam Trammell's rights, as set forth above, in an amount to be determined at a trial of this matter;

d. Against defendant Corporal Michael Rohleder for punitive damages for the violation of Adam Trammell's rights, as set forth above, in an amount to be determined at a trial of this matter;

e. Against defendant Officer Danielle Engen for punitive damages for the violation of Adam Trammell's rights, as set forth above, in an amount to be determined at a trial of this matter;

f. Against defendant Chief Dennis Nasci for punitive damages for the violation of Adam Trammell's rights, as set forth above, in an amount to be determined at a trial of this matter;

g. Against defendant Village of West Milwaukee for its liability pursuant to § 895.46, Wis. Stat., to indemnify the individual defendants in an amount to be determined at a trial of this matter;

h. For all costs, disbursements and actual attorneys' fees pursuant to 42 U.S.C.A. § 1988, and for such other relief as the Court deems just and equitable.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL OF THIS MATTER ON ALL ISSUES SO TRIABLE.**

Dated this 15th day of May, 2018.

Respectfully Submitted:

| GINGRAS, CATES & WACHS, LLP | THE SHELLOW GROUP |
|---|---|
| s/ Mark L. Thomsen | s/ Robin Shellow |
| Mark L. Thomsen | Robin Shellow |
| State Bar No.: 1018839 | State Bar No.: 1006052 |
| 3228 Turnberry Oak Drive, Suite 210 | 324 West Vine Street |
| Waukesha, WI 53188 | Milwaukee, WI 53212 |
| Telephone: (414) 935-5482 | Telephone: (414) 263-4488 |
| Email: mthomsen@gcwlawyers.com | Email: Robin@theshellowgroup.com |